ADOLPHUS F. LINTON ET AL., APPELLANTS, v. GEORGE SHELDON, APPELLEE.

FILED OCTOBER 30, 1915. No. 18316.

Contracts: RESCISSION. A contract procured by the intentional suppression or concealment of material facts touching the very substance of it by one party, which facts, if they had been disclosed, would have prevented the other party from entering into it, may be rescinded by the party deceived, and the guilty party is not entitled to its enforcement.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Charles Haffke* and *Stout, Rose & Wells,* for appellants.

*Sullivan & Rait, contra.*

LETTON, J.

This action is brought to recover the sum of $1,800 alleged to be due plaintiffs upon a contract for the sale of 80 acres of land in Cass county by Adolphus F. Linton, Phœbe R. E. E. Linton, Charles S. Linton and Fryda S. Blessing to one Harshman. Adolphus and Phœbe Linton are husband and wife, and Charles S. Linton and Fryda S. Blessing are their adult children. It is alleged that the agreement was that the conveyance was to be in form sufficient to vest Harshman with the title to the land of which one Jane B. Finlay died seized, and to be of form approved by the Honorable John J. Sullivan; that the defendant who held a mortgage on the land, agreed with the plaintiffs to pay the sum stipulated in the contract; that the plaintiffs complied with all its terms and conditions,

and defendant refused to carry out the agreement and is liable for the contract price.

The answer pleads that the petition does not state a cause of action against Sheldon, and that if the plaintiffs have any remedy it is against Harshman. It also pleads that in 1887 Adolphus F. and Phœbe R. E. E. Linton conveyed the same land to Harshman by warranty deed, and that, by reason of a certain decree rendered in the United States circuit court for the western district of Pennsylvania and a conveyance made thereunder, the grantors had at that time a perfect title, which Harshman took. It is alleged that at the time the contract in suit was entered into the plaintiffs knew these facts, but fraudulently concealed and suppressed the truth, and falsely represented that the title was defective, and that Charles S. Linton and Fryda S. Blessing owned the fee subject to the life estate of their mother, Phœbe R. E. E. Linton; that Harshman and defendant were ignorant of the existence of this decree and conveyance when the contract was executed; that, as soon as this fact was ascertained, they notified the plaintiffs that the contract would not be performed. It also pleads that defendant acted in all things for Harshman, and undertook to advance the money only as his agent and for his benefit.

The reply pleads that there was an honest dispute as to the title, denies the allegations of fraud and concealment, and alleges that the contract was entered into as a compromise and settlement of the dispute.

At the close of the testimony each party moved for a directed verdict in his favor. This submitted the whole case to the trial judge for decision as to both fact and law. *Segear v. Westcott,* 83 Neb. 515; *Dorsey v. Wellman,* 85 Neb. 262; *Henton v. Sovereign Camp, W. O. W.,* 87 Neb. 552; *Martin v. Harvey,* 89 Neb. 173; *Adler v. Royal Neighbors of America,* 90 Neb. 56; *Fassler v. Streit,* 92 Neb. 786; *Fairbanks, Morse & Co. v. Austin,* 96 Neb. 137. A verdict was directed for defendant, and plaintiffs appeal.

In 1887 Phœbe R. E. E. Linton and Adolphus F. Linton, her husband, by their attorney in fact, J. B. Finlay, exe-

cuted in Pennsylvania a warranty deed to George W. Harshman to this 80 acres of land in Cass county, Nebraska. Harshman entered into possession under the deed, and was still in possession in May, 1910, when Charles Haffke, an attorney of Omaha, notified him that the owner of the land had placed in his charge the matter of securing possession of the property, saying in his letter: "This property was alleged to have been conveyed to you by J. B. Finlay, acting under an alleged power of attorney, which, however, was not a legal or valid conveyance, and the heirs are seeking to recover the possession of their land." In the meantime Harshman had executed a mortgage on the land to George Sheldon, the defendant. Negotiations ensued between the Lintons, represented by Mr. Haffke, and Sheldon, acting for Harshman, which resulted in the contract in suit, whereby the four Lintons agreed to sell and convey the land to Harshman, "conveyances to be in form sufficient to vest in the second party the title of which Jane B. Finlay, late of Kittanning Borough, Pennsylvania, died seized, and in form approved by Honorable John J. Sullivan, attorney of Omaha, Nebraska. * * * In consideration of such conveyances, the second party agrees to pay to the first parties the sum of $1,800 upon the delivery to and approval by said Sullivan of the form of deed of conveyance." This was signed by Haffke, as attorney in fact for the Lintons, and by Mr. Harshman. Sheldon did not sign. Mr. Haffke testifies that Mr. Sheldon was present at the time this contract was made, and said: "That he was going to advance the money for the purpose of taking up the contract, and afterwards, when I produced the deed in conformity to Judge Sullivan's request, and the deed which he had approved and left it in his hands, and when Mr. Sheldon left his check there, at that time Mr. Sheldon said he would pay the consideration price and left the check in Mr. Sullivan's hands for that purpose." Before the contract was entered into, and after an examination of the title of record in Cass county, Judge Sullivan made several requirements and conditions to the acceptance of a deed on behalf of his client. He required a deed

from the heirs of Grier C. Orr, trustee, a deed from Mr. Orr's successors in trust, and a warranty deed from the four Lintons, or else a judgment against the heirs of Grier C. Orr quieting the title of the Lintons to the property, in an action brought by the successor in trust of Orr and the Lintons, with a warranty deed, executed after the rendition of the decree, by the Lintons and the successor in trust, to the purchaser. He also required the will of Jane B. Finlay to be probated in Cass county. These requirements were communicated to Mr. Haffke. A deed signed by the Lintons was executed and delivered to Sullivan & Rait, who gave a receipt for the deed and power of attorney reciting they were held "pursuant to the contract between these parties and George W. Harshman. We have also check of George Sheldon for $1,800 for delivery to you when the said contract is carried out. (Signed) Sullivan & Rait." The check signed by Mr. Sheldon is payable to John J. Sullivan. This receipt is dated February 13, 1911. Instead of procuring conveyances from the trustee and Orr's heirs, Haffke took the other alternative, and proceeded to obtain a decree quieting title. A petition to quiet title was filed by him on March 27, 1911, and notice for service by publication begun. A few days before April 11, 1911, Haffke was notified on behalf of Harshman that he would not perform the contract, and on that day a letter was sent to him by Judge Sullivan definitely advising him to that effect. However, he went on with the suit, procured a decree, tendered performance of the contract, and demanded payment, which was refused.

It appears that in an action brought in 1882 in the United States circuit court for the district of Pennsylvania by Mrs. Linton and her husband against the heirs and executors of the estate of her father, James Brown, a deed from Mr. Brown, which conveyed to himself as trustee for Jane B. Finlay, his wife, during her lifetime, and to Mrs. Linton, his daughter, thereafter, all his lands in Nebraska, was declared to be a valid conveyance, and constituted Brown trustee for them as the deed purported. It was also

held that a later deed from Brown to Mrs. Finlay for life and to her children was of no effect. By her will Mrs. Finlay afterwards undertook to cut down the estate of Mrs. Linton to one for life merely, with remainder to her children, Charles and Fryda, and this is the instrument upon which the children rely as their immediate source of title. Lands in Douglas, Cass and Otoe counties in this state, as well as in other states, were conveyed by the Brown trust deed. The proceedings in the United States circuit court were made of record in Douglas county, but were not recorded in Cass county. After the contract was entered into Mr. Sheldon received a hint, and by diligent search learned the whole truth, and at once repudiated the contract. We are satisfied from the evidence that the Lintons were fully cognizant of all these facts and purposely concealed them from the defendant and Harshman at the time the contract was made, and that the contract would never have been entered into if they had been known. Without determining the question whether Mr. Sheldon is liable personally on an oral agreement to pay the money for Harshman, we take the broad ground that, without reference to whether Mr. Haffke knew or was ignorant of the state of the title at the time the contract was made, his principals, who are the plaintiffs in this case, were fully aware of all the facts, and took advantage of the fact that these documents affecting the title were not of record in Cass county, and that Harshman and his advisers were in the dark. Plaintiffs contend that the amount provided for by the contract was clearly the result of a compromise, was much less than the value of the interest of the Linton children, that the dispute was an honest one, made in good faith, and the settlement was to avoid litigation, and therefore there was ample consideration for the contract. This, no doubt, would be true if the facts had been disclosed and the parties stood upon an equal footing; but when by means of an intentional concealment of material facts touching the very substance of the transaction, which, if known to the other party, would have prevented him from making the agreement, one is induced to enter into

a contract and to assume obligations which he would not have assumed if he had known the truth, and he promptly rescinds upon knowledge of the true state of affairs, the guilty parties are not entitled to enforce such contract. Mr. Parsons says there are many cases in which the very propositions of a party imply that certain things, if not told, do not exist. The principle is stated as follows by Judge Gray in *Stewart v. Wyoming Cattle Ranche Co.*, 128 U. S. 383: "If, with the intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

We are convinced that the trial court properly determined the issues both of fact and law, and its judgment is therefore

AFFIRMED.

ROSE and HAMER, JJ., not sitting.